# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| WALTER FULTON, as the Executor of the Estate of NOREEN FULTON, deceased, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 06 C 1321 |
| THERADYNE CORP. and KURT MANUFACTURING COMPANY, INC., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Kurt Manufacturing Company, Inc.'s ("KMC") motion for summary judgment and motion to bar expert testimony. This matter is also before the court on Plaintiff's motion for leave to disclose an expert. For the reasons stated below, we grant KMC's motion for summary judgment, grant KMC's motion to bar, and deny Plaintiff's motion for leave to disclose an expert.

## BACKGROUND

Plaintiff alleges that Noreen Fulton ("Fulton") resided at Holland Home nursing home and used a walker ("Walker") designed and manufactured by KMC and Defendant Theradyne Corporation ("Theradyne") to move around the nursing home. Plaintiff contends that on December 24, 2003, Fulton fell against the Walker and was "snagged upon a sharp edge of said walker . . . causing a[n] avulsion of the skin of her arm. . . ." (Compl. Par. 5). Fulton was allegedly found "bleeding profusely in her room, with her arm impaled on the basket hook." (Ans. 7). Fulton allegedly needed surgery after the accident, suffered a heart attack as a result, and on March 28, 2004, Fulton allegedly died "as a result of said injuries. . . ." (Compl. Par. 8); (Ans. 7). Plaintiff, acting in the capacity of the executor of Fulton's estate, brought the instant action in state court alleging that the Walker was defective in regards to its design and manufacture. Plaintiff included in the complaint a strict products liability claim and a negligence claim under the Wrongful Death Act, 740 ILCS 180/1 *et seq.*, (Counts I and III) and a strict products liability claim and a negligence claim under the Illinois Survival Act, 755 ILCS 5/27-6, (Counts II and IV). Defendants removed this action to federal court and on April 13, 2006, we granted Plaintiff's motion to voluntarily dismiss all claims brought against Theradyne. KMC now moves for summary judgment and to bar the testimony of Plaintiff's expert. Plaintiff moves for leave to disclose his expert.

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material facts exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must

consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Trans. Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

**DISCUSSION**

I. Motion to Bar Plaintiff's Expert and Motion for Leave to Disclose Expert

KMC moves to bar the Plaintiff's proposed expert, Robert Jay Block ("Block"), from testifying because Plaintiff failed to disclose the expert in a timely fashion and Plaintiff moves for leave to disclose his expert at this juncture. Federal Rule of Civil Procedure 26(a) ("Rule 26(a)") provides that a party is required to "disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence" and that the disclosure must "be accompanied by a written report prepared and signed by the witness." Fed. R. Civ. P. 26(a)(2). The expert disclosures "shall be made at the times and in the sequence directed by the court." *Id.* A court can bar a party from presenting an expert due to failure to comply with Rule 26(a). *See Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 743 (7th Cir. 1998)(holding that the district court did not abuse its discretion by barring expert testimony because the plaintiff violated Rule 26); *See Scaggs v. Consolidated Rail Corp.*, 6 F.3d 1290, 1295

4

(7th Cir. 1993)(holding that barring of plaintiff's expert who was disclosed as a witness, but with no report, just two days before the close of discovery was not an abuse of discretion). Plaintiff admits that he did not disclose his expert by the court November 29, 2006 deadline, but contends that his untimely disclosure was justified and harmless. A party can be barred from producing information not disclosed in accordance with Rule 26(a) and "[t]his sanction is 'automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.'" *Keach v. U.S. Trust Co.*, 419 F.3d 626, 639 (7th Cir. 2005)(quoting *Salgado,* 150 F.3d at 742).

A. Whether Untimely Disclosure was Justified

Plaintiff argues that his untimely disclosure of Block was justified because Block could not create his expert report until he reviewed the deposition transcripts of individuals involved in the manufacture and design of the Walker. Plaintiff claims that KMC "refused to produce Robert Paquin, Jan Cervenka, and Kern Walker, current and former employees of both Theradyne and [KMC] for their depositions until after the November 29, 2006, deadline for [P]laintiff's expert disclosure." (Ans. 2). Plaintiff claims that "[p]ursuant to agreement of the parties," the above witnesses were to be deposed on January 9, 2007 and January 10, 2007, but that KMC never presented the witnesses for depositions on those dates. Plaintiff argues that his failure

to disclose Block in a timely fashion is justified because his counsel was merely being cooperative with opposing counsel and was "misled" by opposing counsel. (Ans. 3).

KMC disagrees with Plaintiff's contention that KMC's counsel misled Plaintiff in regards to discovery. The issue of the timeliness of Block's disclosure was brought before this court on KMC's motion to bar and thus KMC disputes Plaintiff's assertion of some implied agreement between the parties regarding Block. KMC also objects to Plaintiff's assertion that KMC understood that it was required to produce the requested witnesses. KMC states that, although Plaintiff indicated his desire to depose the witnesses, Plaintiff never pursued his requests or moved to compel the depositions. KMC is correct that if Plaintiff believed that it was improperly being denied discovery, then Plaintiff should have filed a motion to compel. Yet, Plaintiff filed no motion to compel and provides no reason for that failure. When discovery closed, pursuant to the court schedule, KMC was entirely justified in believing that it was not required to produce the witnesses. KMC also correctly points out that nothing prevented Plaintiff from at least disclosing Block by the disclosure deadline and later supplementing his expert report if additional depositions needed to be taken. Nevertheless, Plaintiff took no such action. Only after KMC filed its motion for summary judgment indicating that Plaintiff cannot prevail in this case due to the lack of an expert did Plaintiff file his instant motion seeking leave to disclose his expert.

This case is similar to *Mannoia v. Farrow*, 2007 WL 397497 (7th Cir. 2007)

6

in which the plaintiff "did not disclose his expert witness within the time-frame provided in the district court's . . . order" and the district court ended up striking the expert's affidavits and related arguments by the plaintiff. *Id.* at *3. The plaintiff argued, as does Plaintiff in the instant action, that there were special reasons that his disclosure was not made until after the court's deadline. In *Mannoia*, the plaintiff contended that "he was unable to retain an expert until after the close of discovery when the deposition transcripts were prepared. . . ." *Id.* The plaintiff in *Mannoia* also "did not disclose the expert testimony as required by Federal Rule of Civil Procedure 26(a)(2), but waited until after [the defendant] filed his summary judgment motion," just as Plaintiff has done in the instant action. *Id.* The Seventh Circuit affirmed the district court stating that if the plaintiff needed additional time to disclose the expert, "it was his duty to seek relief from the court." *Id.*

In the instant action, the court granted the parties one extension of the discovery deadlines in this case and the parties were provided with eight months to complete discovery, which was ample time considering the facts in this case. We also set the expert disclosure deadline five months ahead of time and thus gave Plaintiff ample warning of the court's deadline. On December 18, 2006, and January 18, 2007, the court also made it clear that there was not a sufficient reason to extend the discovery deadlines previously set on June 29, 2006 when the court denied motions to extend the discovery deadlines.

Plaintiff's contention that it agreed with KMC to depose the witnesses in early January 2007 offers no justification for Plaintiff's failure to meet the court's set disclosure deadline. Discovery was closed by the time Plaintiff was scheduling the depositions. The parties cannot dictate the scheduling of case matters to the court, which has an inherent power to manage the cases on its docket. *See Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706-07 (7th Cir. 2006)(stating that "district courts have broad discretion to manage their dockets")*; Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006)(stating that "[w]e live in a world of deadlines," that "[t]he practice of law is no exception," and that "[a] good judge has a right to assume that deadlines will be honored"); *Reales v. Consolidated Rail Corp.*, 84 F.3d 993, 996 (7th Cir. 1996)(stating that "[t]he district courts must manage a burgeoning caseload, and they are under pressure to do so as efficiently and speedily as they can, while still accomplishing just outcomes in every civil action" and that "[p]art of that job means that they are entitled - indeed they must - enforce deadlines"). Plaintiff failed to act reasonably when he presumed that he could ignore the clearly set court disclosure deadline and proceed according to a schedule that he thought that he had worked out with KMC.

Although Plaintiff accuses KMC's "attorneys, by their representations to Plaintiff's attorneys, [of] caus[ing] discovery to go past the court's deadline," it was

not KMC's duty to complete Plaintiff's discovery for him. (Ans. 4). Neither was it KMC's obligation to bring to the court's attention additional discovery desired by Plaintiff. The November 29, 2006, disclosure deadline passed over three months ago and Plaintiff has not offered sufficient justification for his request to disclose his expert in the middle of the briefing on KMC's motion for summary judgment. Thus, Plaintiff's failure to disclose Block in a timely fashion clearly was not justified.

### B. Whether the Untimely Disclosure is Harmless

Plaintiff argues that the untimely disclosure of Block is harmless. Plaintiff concedes that if he is allowed to disclose Block then "it would only be fair to permit [KMC] to depose Dr. Block, and then be given an opportunity to disclose a design expert too." (Ans. 4). According to Plaintiff, KMC will suffer no prejudice since the court can allow KMC to take such steps. However, it is clear that if we were to allow Plaintiff to disclose Block at this juncture that KMC would be prejudiced in its ability to conduct discovery relating to Block. It would also result in delays in this case contrary to deadlines set by this court, including delay in the scheduling of the trial. Thus, the untimely disclosure of Block is not harmless. Therefore, based on the above, we grant KMC's motion to bar Plaintiff from presenting Block as an expert at trial and deny Plaintiff's motion for leave to disclose an expert.

II. Necessity of Expert Testimony

KMC argues that Plaintiff cannot proceed to trial without an expert. Under Illinois law, a party is subject to strict liability if he "sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property." *Lamkin v. Towner*, 563 N.E.2d 449, 457 (Ill. 1990). However, the manufacturer of a product "is not under a duty in strict liability to design a product which is totally incapable of injuring those who foreseeably come in contact with the product." *Hunt v. Blasius*, 384 N.E.2d 368, 372 (Ill. 1978); *Calles v. Scripto-Tokai Corp.*, 2007 WL 495315, at *12 (Ill. 2007)(stating that "[t]he key distinction between a negligence claim and a strict liability claim lies in the concept of fault," that "[i]n a strict liability claim, the focus is on the condition of the product," but that "in a negligence claim, a defendant's fault is at issue in addition to the condition of the product"). In regards to both strict liability claims and negligence claims, "the threshold question of unreasonably dangerous design is not whether the product could have been made safer, but whether it is dangerous because it fails to perform in the manner reasonably to be expected in light of its nature and intended function." *Baltus v. Weaver Div. of Kidde & Co., Inc.*, 557 N.E.2d 580, 586 (Ill. App. Ct. 1990). Although, the determination of whether expert testimony is necessary is judged according to "[t]he specific facts and issues involved" in the case, generally, in products liability and negligence cases involving specialized products and "specialized knowledge," expert testimony is required. *Id.* at 588-89 (stating that

"[m]anufacturing negligence resulting in an unreasonably dangerous product seems particularly appropriate for expert opinion"). A jury cannot be allowed in the absence of expert testimony to "speculate that [the product] was in fact an unreasonably dangerous" product. *Id.*

In the instant action, the Walker is a specialized healthcare device and the design and manufacture of the Walker involves specialized knowledge. This conclusion is bolstered by Plaintiff's contention that it was essential for him to depose KMC's individuals with knowledge of the design of the Walker. Plaintiff also concedes the importance of an expert when he argues, in support of his request to allow his untimely and prejudicial disclosure of his expert, that "barring Plaintiff's expert witness would do great damage to, if not completely eviscerate the plaintiff's strict liability claims." (Ans. 5). After consideration of the particular facts in this case, we agree with KMC that an expert is needed to explain the various aspects for the Walker, including its design and manufacturing, and that it would be pure speculation if the jury was allowed to assess the design and manufacture of the Walker in the absence of expert testimony. An expert is required to explain to the jury why the basket brackets on the Walker were defective and unreasonably dangerous.

Plaintiff relies upon *Varady v. Guardian Co.*, 506 N.E.2d 708 (Ill. App. Ct. 1987), in support of his contention that he does not require an expert in this case. In *Varady*, the plaintiff's crutch allegedly collapsed and the plaintiff brought an action against a crutch manufacturer. *Id.* at 710. The Seventh Circuit held that the

11

plaintiff's testimony along with the admissions of the defendant's expert was sufficient for the jury to reasonably find that "the crutch was being used in a normal manner, that it failed to perform in the manner reasonably expected, resulting in plaintiff's fall and injury, and that there were no reasonable secondary causes for the fall." *Id.* at 712. However, *Varady* is distinguishable from the instant action in that the product in question in *Varady* was a simple crutch, whereas in the instant action the Walker is a more complex product with multiple components. *Id.* Also, in *Varady*, the jury was only asked to assess the straightforward issue of whether the crutch performed properly when it collapsed, which the jury could assess based upon their ordinary experience as laypersons. In the instant action, the jury in this action would be asked to make sophisticated assessments concerning the design and manufacture of the Walker.

The instant action is similar to *Baltus*, 557 N.E.2d 580, in which the plaintiff brought strict products liability claims and negligent design and manufacture claims against the defendant. *Id.* at 581. The plaintiff in *Baltus* did not disclose an expert witness. *Id.* at 588. The court noted that "[s]ome negligence actions do not require expert testimony because they allege 'ordinary' negligence, in the common experience and understanding of the jurors." *Id.* However, the court stated that "[p]roducts liability actions . . . often involve specialized knowledge or expertise outside the layman's knowledge" and that "[m]anufacturing negligence resulting in an unreasonably dangerous product seems particularly appropriate for expert opinion." *Id.* The court concluded that findings concerning the design of the product

12

by the jury in the absence of expert testimony would be based upon speculation. *Id.* at 588-90. Similarly, in the instant action, the design and manufacturing problems alleged by Plaintiff do not involve facts that a lay person juror could assess using his or her ordinary experiences. If, for example, the Walker had collapsed when weight was put on it or the Walker caught on the floor when being pushed and tipped over, a juror might be able to employ his or her own experience and use common sense to make an appropriate finding. In this case, however, Plaintiff is asking the jury to make complex assessments concerning the design and manufacture of the Walker. Thus, as in *Baltus*, expert testimony is required. Therefore, based upon the above, we conclude that an expert is required by Plaintiff, and since we have ruled that Plaintiff is barred from presenting an expert witness, we grant KMC's motion for summary judgment.

III. Condition Present at Time of Accident and Intended Use of Walker

KMC also argues that the Walker merely furnished a condition that made Fulton's injury possible and that Fulton was not using the Walker for its intended or foreseeable purpose when the accident occurred. If a defective condition of a product only "'furnish[es] a condition by which the injury is made possible and that condition causes any injury . . .by [a subsequent act], the two are not concurrent and the existence of the defective condition is not the proximate cause of the injury.'" *West v. Deere & Co.*, 582 N.E.2d 685, 687 (Ill. 1991)(quoting *Barr v. Rivinius, Inc.*, 373 N.E.2d 1063, 1065 (Ill. App. Ct. 1978)); *see also Barr*, 373 N.E.2d at 1067

(stating that "[i]t is clear that a condition of the product must be the proximate cause of plaintiff's injury"). In the instant action, Plaintiff contends that Fulton "had used the [W]alker to walk to the restroom and left the [W]alker outside the restroom in the hallway while she was using the restroom." (Ans. 12). According to Plaintiff, Fulton "then exited the bathroom and returned to the hallway, but fell and snagged her arm on one of the basket hooks." (Ans. 12). Thus, according to Plaintiff's own depiction of the events in question, Fulton fell and caught her arm on the Walker when returning from the bathroom rather than while she was using the Walker to assist her movement or to support herself. Thus, the Walker merely happened to be in an unfortunate position when Fulton fell. There is no evidence that suggests that the Walker collapsed or failed to perform as intended. The Walker would thus be no more to blame for Fulton's injury than, as KMC states, the sink would be if Fulton had slipped and hit her head on the sink. Also, since the Walker was not being used to support Fulton or assist Fulton to move around when the accident occurred, the Plaintiff's claims fail because the Walker was not being used for its intended or foreseeable purpose when the accident occurred. *See Hunt*, 384 N.E.2d at 372 (stating that "[v]irtually any product is capable of producing injury when put to certain uses or misuses" and that "[t]his is particularly true when injury results from a collision with the product"). Therefore, even if Plaintiff had produced expert testimony in this case, we would grant KMC's motion for summary judgment. In conclusion, while we are sympathetic as to the injury suffered by Fulton when she fell and to the feelings of her surviving relatives, we must rule according to the law.

In this case, we conclude that Plaintiff cannot as a matter of law proceed to trial on his claims.

**CONCLUSION**

Based on the foregoing analysis, we grant KMC's motion for summary judgment in its entirety. We also grant KMC's motion to bar and deny Plaintiff's motion for leave to disclose an expert.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 12, 2007